**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FATHI SAID, an individual, and JBV ACQUISITIONS, LLC, | ) | |
| | ) | No. 23 C 2858 |
| *Plaintiffs*, | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| MARCIN CHOJNACKI, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Fathi Said claims Defendants Laurena "Lori" Mikosz and Marcin Chojnacki tricked him into purchasing 27 run-down single-family homes. While holding themselves out as Said's real-estate agents, Mikosz and Chojnacki allegedly fed him false assurances about the buildings' condition, ownership, and resale potential. Behind the scenes, Mikosz's and Chojnacki's associates, the remaining Defendants, through "puppet entities," bought the buildings and resold them to Said's LLC, Plaintiff JBV Acquisitions, at a significant markup. Then, Defendants billed Said for renovations that were never performed. Plaintiffs sued, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), (d), and various state-law claims. (Dkt. 2). Defendants now move to dismiss. (Dkts. 30, 45). For the reasons below, Chase RE's motion to dismiss [30] is granted in part and denied in part and FNBO's and Five Star's motion to dismiss [45] is denied.

## BACKGROUND

In October 2020, Plaintiff Fathi Said, a California resident, saw an advertisement on social media for "Flip Chicago" (Dkt. 2 ¶ 21). According to the advertisement, Flip Chicago helped real-estate investors purchase and then renovate single-family homes to quickly resell, or flip, the

1

properties. (*Id.* at ¶ 22). Upon seeing the advertisement, Said sent a query to Flip Chicago. (*Id.* at ¶ 23). Defendant Lori Mikosz, who was in Illinois, replied to Said's inquiry, telling him that she and Defendant Marcin Chojnacki were licensed real-estate brokers and agents for Defendant Chase Real Estate LLC ("Chase RE"), an affiliate of Flip Chicago. (*Id.* at ¶¶ 26–27). Thus, "the transactions would be safely negotiated and consummated under the auspices of Chase Real Estate." (*Id.* at ¶ 27). Chojnacki, Mikosz, and Chase RE operate out of the same office space in Roselle, IL. (*Id.* at ¶ 18). At the time, Flip Chicago's website was very similar to Chase RE's website. (*Id.* at ¶¶ 28–29; Dkts. 2-1, 2-2).

Chojnacki and Mikosz told Said that he would be purchasing and flipping Real Estate Owned ("REO") properties—meaning, foreclosed and repossessed properties that investors can acquire from lenders at a "significantly discounted price." (Dkt. 2 ¶¶ 31–32). Mikosz and Chojnacki led Said to believe that they would represent him as his agents, and Mikosz would rely on her professional relationships with REO banks to specifically represent Said in pursuing offers. (*Id.* at ¶¶ 27, 35–36). Then, after purchasing the REO properties, Flip Chicago would help him renovate quickly to sell them at a profit. (*Id.* at ¶¶ 22, 53). Indeed, Mikosz and Chojnacki promised Said that, as part of Chase RE's services, their service providers would renovate the properties "in a cost effective and reasonable manner." (*Id.* at ¶ 54). Believing in Mikosz and Chojnacki representations, Said purchased 27 properties, including 1414 South 60th Street, Cicero, Illinois (the "Cicero Property"). (*Id.* at ¶¶ 44, 55.2).[1]

Although the Cicero Property was listed for $169,900, Defendants told Said that they would help him acquire the property for $158,000. (*Id.* at ¶ 58.2). Defendants also provided financials showing that if Said invested $88,000 into renovations, the Cicero Property's value

---

[1] Beginning on page 11, Plaintiff repeats paragraphs 55 through 65 in his Complaint. For clarity, the Court will refer to the first set of paragraphs 55–66 as "¶¶ 55.1–65.1" and the second set of paragraphs as "¶¶ 55.2–65.2."

would rise to $310,000. (*Id.* at ¶ 64.2; *see* Dkt. 2-6). Said also entered a Renovation Coordination and Oversight Services Agreement (the "Renovation Agreement") with Chase RE. (*Id.* at ¶ 67). Under the contract, Chase RE would provide renovation services through its partnered contractors. (*Id.* at ¶ 68). Mikosz and Chojnacki assured Said that they had "significant experience with renovation oversight management." (*Id.* at ¶ 66). They recommended trusted contractors who they had worked with for ten years and could "get the job done." (*Id.* at ¶ 69). Based on Mikosz's and Chojnacki's representations, Said, through his LLC, Plaintiff JBV Acquisitions, purchased the Cicero Property for $151,000 from Defendant BMO Property Management, Inc. ("BMO Management"). (*Id.* at ¶¶ 2, 59.2–60.2). Upon closing, Chase RE received a commission. (*Id.* at ¶ 104).

Unbeknownst to Said, there was no REO bank selling foreclosed properties. (*Id.* at ¶ 59.2). Rather, BMO Management bought the Cicero Property for $110,000, not from a bank, before reselling it to Said. (*Id.* at ¶¶ 59.2–60.2). BMO Management is an Illinois corporation headed by Defendant David Brandonisio, an affiliate of Chojnacki. (*Id.* at ¶¶ 6–7). The corporation's official address is a UPS store. (*Id.* at ¶ 45). While BMO Management has a similar name to the Bank of Montreal, the two entities have no relationship. (*Id.* at ¶¶ 38, 47). Nor was there any foreclosure. (*Id.* at ¶ 59.2).

After closing, Said paid $76,000 of the $88,000 quote for renovation costs. (*Id.* at ¶ 71). Mikosz's husband's companies, Defendants FNBO Property Management ("FNBO") and Five Star Construction Services ("Five Star")—which operated together at Mikosz's "behest" or under her "outright control"—received portions of that $76,000. (*Id.* at ¶ 79; Dkt. 51 at 3–4).[2] But the project "came to a halt," and Defendants told Said that he would need to pay an additional $80,000

---

[2] Said supplemented his allegations concerning FNBO and Five Star in response to their motion to dismiss. (*See* Dkt. 51 at 3–5).

to complete the renovations. (Dkt. 2 ¶ 71). The work was either never performed or haphazardly done. (*Id.* at ¶ 79; Dkt. 51 at 4). For example, FNBO received $10,800 to create an architectural plan that was never completed. (Dkt. 2 ¶¶ 73, 75; Dkt. 51 at 4). Some renovations were completed without the requisite permitting, which required expensive retroactive inspections. (*Id.* at ¶ 80). Without Said's knowledge, Defendants funneled his renovation funds to various affiliates, including Mikosz's husband. (*Id.* at ¶ 82). Mikosz never told Said that her husband owned or managed FNBO and Five Star. (Dkt. 51 at 4). The post-closing renovation antics, Said alleges, prevented him from discovering the Properties' "true condition," which Defendants had exaggerated, and their ownership, which Defendants had misrepresented. (Dkt. 2 ¶¶ 58.1–59.1; Dkt. 51 at 3–4).

Said faced similar issues in purchasing 26 other properties through Defendants. During all these transactions, Mikosz assured Said that (1) she and Chojnacki were his agents; (2) that he was buying foreclosed properties at the REO price directly from the foreclosing bank; and (3) that their service providers would quickly renovate the properties at a discounted price so that he could make a profit. (Dkt. 2 ¶¶ 27, 33, 39, 43, 54, 55.1–61.1). But the properties were either owned by BMO Management or Defendant 1st Midwest Financial, Inc ("1st Midwest"), where Defendant Kendall Murphy—who is also Chojnacki's affiliate— served as President. (*Id.* at ¶¶ 49, 52). Like BMO Management, 1st Midwest is allegedly posing as the actual bank—First Midwest Bank. (*Id.* at ¶¶ 49, 52). Although Said paid "exorbitant fees" to renovate the properties, the work was either not completed or haphazardly performed. (*Id.* at ¶ 64.1). Further, Defendants concealed building-code and occupancy violations from Said. (*Id.* at ¶ 60.1). Defendants have tried to "repeat the scam" by offering Said additional properties. (*Id.* at ¶ 86). Defendants have allegedly scammed other investors like Said. (*Id.* at ¶¶ 87–88).

Said and JBV Acquisitions (together, "Said") filed this suit in May 2023. (Dkt. 2).[3] In Count I of the Complaint, Said alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. §§ 1962(c), (d). (*Id.* at ¶¶ 89–107). Count II is a common-law fraud claim against Mikosz and Chojnacki. (*Id.* at ¶¶ 108–14). Count III alleges that Mikosz and Chojnacki violated the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1 *et seq.* (*Id.* at ¶¶ 115–21). Count IV alleges that Mikosz, Chojnacki, and Chase RE violated the Illinois Real Estate License Act (IRELA), 225 ILCS 454/1 *et seq.* (*Id.* at ¶¶ 122–28). Count V brings a negligent-misrepresentation claim against Mikosz and Chojnacki. (*Id.* at ¶¶ 129–35). Count VI brings a breach-of-contract claim against Chase RE. (*Id.* at ¶¶ 136–44). Last, Count VII brings an unjust enrichment claim against all Defendants. (*Id.* at ¶¶ 145–49).

Chase RE, joined by most of the remaining Defendants,[4] moves to dismiss the Complaint for failure to state a claim. (Dkt. 30; *see also* Dkts. 33–35). In addition to joining Chase RE's motion, FNBO and Five Star move separately to dismiss for failure to state a claim. (Dkt. 45).

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570 (7th Cir. 2023) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[3] This is one of eleven related actions proceeding before this Court. *See* Amended Complaint, *Malik v. Prairie Raynor LLC*, No. 23-cv-01182 (N.D. Ill. Mar. 2, 2023); Complaint, *Shankar v. Fairview Ave. Props. LLC*, No. 23-cv-01469 (N.D. Ill. Mar. 9, 2023); Complaint, *Abbas v. Mikosz*, No. 23-cv-01691 (N.D. Ill. Mar. 17, 2023); Complaint, *Sor v. TCF Nat'l Holdings, Inc.*, No. 23-cv-02401 (N.D. Ill. Apr. 18, 2023); Complaint, *Chen v. Chojnacki*, No. 23-cv-02520 (N.D. Ill. Apr. 21, 2023); Complaint, *Michel v. Chojnacki*, No. 23-cv-02546 (N.D. Ill. Apr. 24, 2023); Amended Complaint, *Haynes v. Fairview Ave Props. LLC*, No 23-cv-1596 (N.D. Ill. May 16, 2023); Complaint, *Stafford v. Chojnacki*, No. 23-cv-03173 (N.D. Ill. May 19, 2023); Complaint, *Hui v. Chojnacki*, No. 23-cv-03430 (N.D. Ill. May 31, 2023); Complaint, *Fernandez v. Chojnacki*, No. 23-cv-04406 (N.D. Ill. July 7, 2023).
[4] CK Developers has requested an extension to respond to Said's Complaint, (Dkt. 56), which is granted.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)).

For claims sounding in fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to "state with particularly the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, a plaintiff must "describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).

## DISCUSSION

### I. Racketeer Influenced and Corrupt Organizations Act (RICO) (Count I)

In Count I, Said alleges that Chojnacki, Mikosz, 1st Midwest, BMO Management, Murphy, and Brandonisio (collectively, "the § 1962(c) Defendants") violated § 1962(c), (Dkt. 2 ¶¶ 89–99), while the remaining Defendants Chase RE, FNBO, CK Developers, and Five Star (collectively, "the § 1962(d) Defendants") violated § 1962(d), (*id.* at ¶¶ 100–04). Defendants challenge Said's claims under both subsections. Before diving into the RICO allegations, it is worth noting that the complaints in the ten related cases pending before this Court—all describing similar schemes to defraud other plaintiffs by the same or similar defendants[5]—give Said's claims a plausibility boost. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443

---

[5] *See* Amended Complaint, *Malik*, No. 23-cv-01182; Complaint, *Shankar*, No. 23-cv-01469; Complaint, *Abbas*, No. 23-cv-01691; Complaint, *Sor*, No. 23-cv-02401; Complaint, *Chen*, No. 23-cv-02520; Complaint, *Michel*, No. 23-cv-02546; Amended Complaint, *Haynes*, No. 23-cv-01596; Complaint, *Stafford*, No. 23-cv-03173; Complaint, *Hui*, No. 23-cv-03430; Complaint, *Fernandez*, No. 23-cv-04406.

(7th Cir. 2011) ("It is appropriate to accord limited corroborative weight to allegations in another's lawsuit.").

### A.      Section 1962(c)

Under § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1964(c) "empowers private parties to bring lawsuits against those engaged in racketeering activity when that activity has caused them harm." *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1093 (7th Cir. 2018) (citing *Rotella v. Wood*, 528 U.S. 549, 557 (2000)). To state a claim under § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *accord Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 587–88 (7th Cir. 2017).

### 1.      Conduct of an Enterprise

A plaintiff's first step under § 1962(c) is to identify an "enterprise." *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (citation omitted). An "enterprise" means "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *see also Walgreen*, 719 F.3d at 853 (observing that the statutory definition of "enterprise" is construed broadly). An "association-in-fact" enterprise has "three structural features: [1] a purpose, [2] relationships among those associated with the enterprise; and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009); *Sabrina*, 869 F.3d at 588. Put simply,

7

this type of enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle*, 556 U.S. at 946 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Separate from the RICO enterprise, the plaintiff must point to a "person"—that is, the defendant. *Walgreen*, 719 F.3d at 853 (citing *Cedric Kushner*, 533 U.S. at 161); *see also Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004) ("Without a difference between the defendant and the 'enterprise' there can be no violation of RICO."). "[T]hat 'person' must have conducted or participated in the conduct of the *enterprise's* affairs, not just its own affairs." *Walgreen*, 719 F.3d at 854 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)) (cleaned up). In this context, conduct refers to a defendant's operation or management of the enterprise. *See Sabrina*, 869 F.3d at 589 (citing *Reves*, 507 U.S. at 179).

Here, Said has sufficiently pleaded an association-in-fact enterprise with purpose, relationships, and longevity. He alleges that the § 1962(c) Defendants—which no one disputes are RICO "persons"—"were associated in fact" as the "Flip Chicago Enterprise." (Dkt. 2 ¶¶ 90–91). That enterprise's "primary purpose . . . was to lure and then fleece unsuspecting real estate investors" for financial gain. (*Id.* at ¶ 92). To ensure the Flip Chicago Enterprise's profit at the expense of investors like Said, its members allegedly worked on both sides of real-estate transactions. Mikosz and Chojnacki worked together from their shared office, doing business as Flip Chicago. After drawing Said in with promises of too-good-to-be-true investment opportunities, Mikosz and Chojnacki purported to represent Said as real-estate agents in his purchase of the Properties. Mikosz and Chojnacki assured Said that the properties would be sold from REO banks and that Mikosz specifically represented that, through her professional relationships with banks, she would help Said make appropriate offers. They encouraged Said to

trust their numerous and repeated misstatements about the Properties' condition and profitability. For example, after Said agreed to buy the Cicero Property for $151,000, Brandonisio, Chojnacki's affiliate, through BMO Management, bought the Properties for $110,000 and resold them to Said at a $40,000 profit. This same sleight of hand occurred with the other 26 properties Said purchased through Flip Chicago. Brandonisio and Murphy, also Chojnacki's affiliates, through BMO Management or 1st Midwest, purchased the properties and resold them to Said at a higher price.

Defendants continued the fraud after closing: Said relied upon Chase RE, and its partner contractors, for renovations. Mikosz and Chojnacki assured Said that they trusted the contractors to "get the job done." (*Id.* at ¶ 69). Unbeknownst to Said, some of the contractors were Mikosz's husband's companies, FNBO and Five Star. Although Mikosz and Chojnacki vouched for FNBO and Five Star, their workmanship was poor. They overcharged Said for unspecified charges and either never completed the renovation work or performed a haphazard job. Renovations were performed without first receiving the proper permits. That forced Said to receive retroactive inspections and redo certain renovations.

The sophisticated coordination and relationships among Defendants on both sides of Said's purchases and renovations reflect "an unusual degree of economic interdependence" that helps nudge the existence of the Flip Chicago Enterprise across the plausibility threshold. *See Bible v. U.S. Aid Funds, Inc.*, 799 F.3d 633, 656 (7th Cir. 2015); *see also, e.g.*, *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384, 388–89 (7th Cir. 2010) (holding that the plaintiff adequately alleged an enterprise by pointing to a coordinated fraudulent scheme); *cf. Walgreen*, 719 F.3d at 855 ("RICO does not penalize parallel, uncoordinated fraud." (citing *Boyle*, 556 U.S. at 947 n.4)). Indeed, that coordination appears essential to the success of the alleged scheme. Rather than "a run-of-the-mill commercial relationship where each entity acts in its individual

capacity to pursue its individual self-interest," therefore, the Flip Chicago Enterprise looks more like a "truly joint enterprise where each individual entity acts in concert with the others to pursue a common interest." *See Bible*, 799 F.3d at 655–56. Moreover, the alleged Flip Chicago Enterprise lasted long enough for its members to pursue the enterprise's purpose of attracting investors and profiting from their purchases. *See Walgreen*, 719 F.3d at 853 (citing *Boyle*, 556 U.S. at 946). After Said closed on the Properties, Defendants charged him exorbitant costs for poorly performed work. Defendants have allegedly scammed other investors like Said.

Defendants contend that Said has failed to plead a distinct enterprise because there is "complete identity between the alleged 'persons' and the alleged members of the 'enterprise.'" (Dkt. 31 at 6–7); *see Baker*, 357 F.3d at 692. This argument rests on the mistaken view that an enterprise's members cannot be named as defendants. Of course, an entity cannot be liable under RICO for "operat[ing] *itself* unlawfully." *See Baker,* 357 F.3d at 691–92; *Walgreen*, 719 F.3d at 854; *see also Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 747 F.2d 384, 402 (7th Cir. 1984), *aff'd on other grounds*, 473 U.S. 606 (1985). Yet, a plaintiff may state a RICO claim against each member of an association-in-fact enterprise. *See Haroco*, 747 F.2d at 401 ("Where persons associate 'in fact' for criminal purposes . . . each person may be held liable under RICO for his, her, or its participation in conducting the affairs of the association in fact through a pattern of racketeering activity.").

To satisfy RICO's distinctness requirement, the enterprise can "be either formally (as when there is incorporation) or practically (as when there are other people besides the proprietor working in the organization)" separate from the "person." *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985); *see also Cedric Kushner*, 533 U.S. at 162–63 ("The corporate owner/employee, a natural person is distinct from the corporation itself, a legally different entity with different rights and

responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that." (citing *McCullough*, 757 F.2d at 144)). Said's allegations suggest that the Flip Chicago Enterprise is distinct from each of the § 1962(c) Defendants who served as members. Unlike the enterprise's members—who are "persons," capable of holding property—the Flip Chicago Enterprise is a network of individuals and entities, associated in fact, and thus unable to "hold any interest in property or even be brought into court." *See Haroco*, 747 F.2d at 401. Accordingly, Said has alleged the existence of a distinct enterprise.

Said has also plausibly alleged that the § 1962(c) Defendants participated in operating or managing the Flip Chicago Enterprise's affairs. *See Sabrina*, 869 F.3d at 589 ("[T]o satisfy the 'conduct' element, a plaintiff must allege that the defendant participated in the operation or management of the enterprise itself, and that the defendant played some part in directing the enterprise's affairs.") (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727–28 (7th Cir. 1998)) (cleaned up); *Reves*, 507 U.S. at 179; *see also Bible*, 799 F.3d at 657. The precise hierarchy of the Flip Chicago Enterprise may be unclear. Yet, Said has alleged that Chojnacki and Mikosz, through Flip Chicago, attracted and purported to represent unwitting investors while Brandonisio and Murphy, using imposter banks 1st Midwest and BMO Management, purchased and resold properties to those investors. FNBO and Five Star Construction perpetuated the ruse by fraudulently billing for renovations. These allegations permit a reasonable inference that the § 1962(c) Defendants held leadership roles and took part in directing the enterprise.

### 2. Pattern of Racketeering Activity

A pattern of racketeering activity requires the completion of at least two predicate acts within ten years. *Bible*, 799 F.3d at 659; 18 U.S.C. § 1961(5). The two violations "must exhibit continuity plus relationship. Related predicate acts have the same or similar purposes, results,

participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Sabrina*, 869 F.3d at 589 (quoting *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 828 (7th Cir. 2016)) (cleaned up); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "Continuity is 'centrally a temporal concept.'" *Empress*, 831 F.3d at 828 (quoting *H.J.*, 492 U.S. at 242). Analytically, "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* (quoting *H.J.*, 492 U.S. at 241).

While Defendants do not challenge Said's satisfaction of the relationship-plus-continuity test, they argue that Said has failed to adequately plead predicate acts. (Dkt. 31 at 7–9). As predicate acts, Said alleges mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. (Dkt. 2 ¶¶ 95–96). "The elements of mail fraud are: (1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." *Bible*, 799 F.3d at 657 (quoting *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 298–99 (7th Cir. 2003)) (cleaned up); 18 U.S.C. § 1341. Wire fraud has the same elements, except that the defendant must use interstate wires instead of mail to further the scheme. *Bible*, 799 F.3d at 657 (citing *United States v. Green*, 648 F.3d 569, 577–78 (7th Cir. 2011)); 18 U.S.C. § 1343.

Said's allegations of mail and wire fraud are subject to Rule 9(b)'s particularity requirement. *See Bible*, 799 F.3d at 658; Fed. R. Civ. P. 9(b). At a minimum, therefore, Said must "describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Bible*, 799 F.3d at

658 (quoting *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001)). Since "fair notice is the 'most basic consideration underlying Rule 9(b),'" in a case involving multiple defendants, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (quoting *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777–78 (7th Cir. 1994)).

Said alleges that "Defendants placed ads on the Internet and on social media with the intent to induce investors to participate in 'REO' real estate opportunities." (*Id.* at ¶ 96(a)). Yet, Defendants "actually intended to sell the duped investor their own significantly marked-up property." (*Id.*) Said alleges further that Defendants engaged in a "sustained fiction," "replete with misrepresentations and calculated omissions" to mislead Said into believing that he was buying property directly from an REO bank at REO-level pricing. (*Id.* at ¶ 96(b)). Said's RICO Count incorporates his previous, more detailed allegations. (*See id.* at 16). While some of these allegations lump Defendants together, others describe the "who, what, when, where, and how" of the fraud.

In October 2020, using wired communication, Mikosz replied to Said's response to a social media advertisement for Flip Chicago. (*Id.* at ¶¶ 21–24). Mikosz then introduced Said to Chojnacki, her managing broker for Flip Chicago, a Chase RE affiliate. (*Id.* at ¶¶ 26–29). Mikosz and Chojnacki told Said that he could purchase foreclosure properties directly from REO banks. (*Id.* at ¶¶ 31–35). For example, on January 5, 2021, Mikosz emailed Said a listing falsely describing the Cicero Property, which he later purchased, as a "foreclosure." (*Id.* at ¶¶ 57.2–59.2; Dkt. 2-6). Said alleges Mikosz and Chojnacki made these and other false statements leading up to Said's purchase of 27 apartment buildings with intent to defraud him. (Dkt. 2 ¶¶ 27, 33–49, 54,

61.1–62.1, 65.2, 69.2, 96); *see Bible*, 799 F.3d at 658 (observing that fraudulent intent "may be alleged generally") (citing Fed. R. Civ. P. 9(b)).

Brandonisio and Murphy, using "imposter banks" 1st Midwest and BMO Management, participated in the alleged fraud by purchasing the Properties and then selling them to Said. (*Id.* at ¶¶ 48–49). Said's well-pleaded allegations add up to at least two plausible instances of wire fraud—a sufficient pattern of racketeering activity. *See Empress*, 831 F.3d at 827 ("Each use of the wires can be an individual count of wire fraud and an individual RICO predicate for the purpose of establishing two predicate acts.").[6] Accordingly, Said's § 1962(c) claim survives.

### B. Section 1962(d)

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To state a claim under § 1962(d), a plaintiff "must allege that the defendant (1) agreed to maintain an interest in or control of an enterprise, or to participate in an enterprise's affairs, (2) through a pattern of racketeering activity, and (3) that the defendant agreed that some member of the conspiracy (not necessarily the defendant herself) would commit at least two predicate acts in furtherance of those goals." *Domanus v. Locke Lord LLP*, 847 F.3d 469, 479 (7th Cir. 2017) (citing *DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011)). Subsection (d)'s concern is "the agreement to participate in an endeavor, which if completed would violate a substantive provision of the Act." *Id.* (citing *Goren*, 847 F.3d at 731–32); *see also Empress*, 831 F.3d at 822–23 ("As with any conspiracy, a RICO conspirator 'must intend to further an endeavor which, if completed, would satisfy all elements of a substantive criminal offense, but it suffices that he would adopt the goal of furthering or

---

[6] Said alleges that "[t]he Flip Chicago Enterprise conducted its racketeering activity, in part, . . . through the mailing of checks." (*Id.* at ¶ 94).

facilitating the criminal endeavor.'" (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)));
*Domanus*, 847 F.3d at 479. Here, that substantive provision is subsection (c).

In Chase RE's motion to dismiss, Defendants argue that Said's § 1962(d) claim fails
because his § 1962(c) claim is deficient. (Dkt. 31 at 5–6); *see, e.g.*, *Patel v. Mahajan*, 2012 WL
3234397, at *5 (N.D. Ill. Aug. 6, 2012) ("When a § 1962(c) claim fails, a § 1962(d) claim premised
on the same facts fails as well." (collecting cases)). Yet, Said has stated a claim under § 1962(c).
Chase RE's motion raises no other arguments against Said's § 1962(d) claim, and the Court
declines to invent arguments for Defendants. *See Hicks v. Hepp*, 871 F.3d 513, 531 (7th Cir. 2017)
("Neither the district court nor this court are obliged to research and construct legal arguments for
parties, especially when they are represented by counsel." (quoting *Nelson v. Napolitano*, 657 F.3d
586, 590 (7th Cir. 2011))).

In addition to joining Chase RE's motion, FNBO and Five Star challenge Said's § 1962(d)
claim through a separate motion to dismiss. (Dkt. 45 at 1–2). They argue, with little supporting
authority, that Said's Complaint alleges "no racketeering activities" by FNBO and Five Star, apart
from Mikosz's marriage to an officer of these entities. (*Id.* at 2). To start, subsection (d) does not
require alleging that the defendant committed predicate acts. *See Empress*, 831 F.3d at 823 ("A
RICO conspirator need not agree to commit personally two predicate acts in furtherance of the
enterprise; rather, he must agree that someone will commit them." (citing *Salinas*, 522 U.S. at 65)).
The conspirator need only "knowingly agree to perform services of a kind which facilitate the
activities of those who are operating the enterprise in an illegal manner." *Id.* (quoting *Brouwer v.
Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000)).

Said's Complaint, with help from his response to the motion to dismiss, (*see* Dkt. 51),[7] sufficiently alleges that FNBO and Five Star knowingly agreed to facilitate the § 1962(c) Defendants' post-closing fraudulent scheme. Beyond alleging that FNBO and Five Star operated together under Mikosz's husband's management and under Mikosz's direction or control, Said alleges that he paid FNBO and Five Star for renovations that they never completed or performed haphazardly. (Dkt. 2 ¶¶ 71, 73, 79–80; Dkt. 51 at 3–4). Mikosz allegedly concealed her relationship to these companies, while Defendants funneled Said's renovations funds to Mikosz's husband, among other affiliates. (Dkt. 2 ¶ 82; Dkt. 51 at 4). FNBO's and Five Star's part in the scheme, Said alleges, prevented him from discovering misrepresentations about the Properties' true condition and ownership. (Dkt. 2 ¶¶ 58–59; Dkt. 51 at 3–4); *see Domanus*, 847 F.3d at 482 ("[W]hen the acts performed by the alleged members of the conspiracy are unlikely to have been done alone, the court may infer agreement." (citations omitted)). In total, these well-pleaded facts permit a reasonable inference that FNBO and Five Star were "aware of the essential nature and scope of the enterprise and intended to participate in it." *See Domanus*, 847 F.3d at 479 (quoting *United States v. Muskovsky*, 863 F.2d 1319, 1324 (7th Cir. 1988)). Thus, Count I may proceed in its entirety.

## II.     State-Law Claims (Counts II–VII)

In Said's remaining claims under state law, he alleges common-law fraud (Count II); violation of the ICFA (Count III); violation of the IRELA (Count IV); negligent misrepresentation (Count V); breach of contract (Count VI); and unjust enrichment (Count VII). (Dkt. 2 ¶¶ 108–35; 145–49).

---

[7] Although FNBO's and Five Star's reply makes little effort to grapple with the additional allegations in Said's response brief, (*see* Dkt. 52), in opposing dismissal, Said is free to "elaborate on his factual allegations so long as the new allegations are consistent with the pleadings." *See Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 n.2 (7th Cir. 2021) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

## A.   Fraud, ICFA, IRELA, Negligent Misrepresentation, and Unjust Enrichment

With scant citations to caselaw, Defendants contend that Counts II through V sound in fraud, and these claims fail to meet Rule 9(b)'s heightened pleading requirement "for the same reasons" as Said's RICO claim. (Dkt. 31 at 9–14). In the same vein, Defendants point out that Said's unjust-enrichment claim is "tied to the fate" of his other claims. (*Id.* at 13–14 (quoting *Vanzant v. Hill's Pet Nutrition*, 934 F.3d 730, 740 (7th Cir. 2019))); *see Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) ("Under Illinois law, there is no stand-alone claim for unjust enrichment."). Again, Said has stated a RICO claim, and the Court need not invent arguments for Defendants. *See Hicks*, 871 F.3d at 531. By failing to develop further arguments on the sufficiency of Said's state-law claims, Defendants have waived any arguments they might have made. *See Wernstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005); *Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023).

## B.   Breach of Contract

In Count VI, Said claims that Chase RE breached the Renovation Agreement by failing to perform services in a professional and competent manner. (Dkt 2 ¶ 137). To state a claim for breach of contract under Illinois law, a plaintiff must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 883 (7th Cir. 2022) (citing *Babbitt Muns., Inc. v. Health Care Serv. Corp.*, 64 N.E.3d 1178, 1186 (Ill. App. Ct. 2016)).

Chase RE contends that there is no plausible breach because Said conflates Chase RE's obligations with those of contractors. (Dkt. 31 at 12). Said has conceded this argument by making no effort to respond to it. (*See generally* Dkt. 51); *e.g.*, *Calderon v. Village of Bridgeview*, 2020 WL 1139252, at *3 (N.D. Ill. Mar. 9, 2020) (finding that plaintiff conceded an argument

because he failed to address it in his response brief (internal citation omitted)). Accordingly, Said's breach-of-contract claim against Chase RE is dismissed.

## CONCLUSION

For the reasons above, Chase RE's Motion to Dismiss [30] is granted in part and denied in part; FNBO's and Five Star's Motion to Dismiss [45] is denied. Said's breach-of-contract claim in Count VI is dismissed without prejudice for failure to state a claim. Said's remaining claims in Counts I–V may move forward consistent with this Opinion.

Virginia M. Kendall
United States District Judge

Date: December 6, 2023

18